UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HONDA LEASE TRUST, | : |
| Plaintiff, | : |
| v. | : |
| | : CASE NO. 3:05CV1426(RNC) |
| MIDDLESEX MUTUAL ASSURANCE CO., ET AL., | : |
| Defendants. | : |

ORDER

In 2001, Honda Lease Trust ("Honda") was sued regarding a motor vehicle accident allegedly caused by Gina Longo while she was driving a Honda-leased vehicle. The victim of that accident, Mitchell Amtower, sued both Longo and Honda in Connecticut Superior Court. Honda was an insured under Longo's insurance policy, which was issued by defendant Middlesex Mutual Insurance Company ("Middlesex") and had a policy limit of $300,000. Middlesex hired defendant Gordon, Muir and Foley ("GMF") to defend both Longo and Honda in the Amtower action.

The complaint alleges that, although the Amtower action could at some early stage have been settled within policy limits, the defendants Middlesex and GMF failed to do so and failed to keep Honda informed of the case status. Eventually Honda engaged another law firm, Campbell, Campbell, Edwards & Conroy, PC (the "Campbell firm"). In January 2005, the case settled for $849,000, with Honda paying $549,000. The complaint alleges,

1

among other things, a claim of malpractice against GMF and a claim of bad faith failure to settle against Middlesex.

Pending before the court are GMF's Motion to Compel (doc. #140) and plaintiff's Motion for Protective Order (doc. #135). These motions require the court to determine whether GMF is entitled to production of certain documents involving communications between Honda and its counsel, the Campbell firm.[1]

## A. Procedural History

The parties originally filed motions asking the court to determine the discoverability of a large number of documents listed on a 15-page privilege log. (Docs. #107, 111.) After oral argument, the court entered the following order:

> The parties shall meet and confer in an effort to eliminate disputes and narrow the scope of the issues presented. As to disputes which remain, the parties may file a motion to compel and/or a motion for protective order accompanied by a memorandum of law by no later than January 5, 2007. Memoranda in opposition shall be filed within 21 days of the filing of the motion. As the parties agreed in the 11/27/06 status conference, any motion shall be accompanied by a revised privilege log containing a representative sample of the disputed documents which best illustrates the issue raised by the parties. In accordance with the discovery plan adopted by the court and the parties, the court will rule on the

---

[1]The defendant's discovery request requested all documents regarding the Amtower litigation "except advice given by counsel for the plaintiff to prosecute the current claim." (See Def's Mem., doc. #140 at 3.) In its motion, however, the defendant argues that "to the extent that [Honda's] settlement strategy and refusal to settle sooner were linked to Honda's planning of a bad faith claim, that information should also be discoverable." (Id. at 28 n. 14.)

2

> representative sample and the parties then will meet and confer regarding the remainder of the documents, using the court's ruling as an indication of how the court might rule on similar documents.

(Doc. #133.) The parties have now submitted an exemplar privilege log listing nine disputed documents(doc. # 140-3) as well as extensive additional briefing.[2] The plaintiff has submitted a copy of the exemplar documents to chambers for *in camera* review. (See Doc. #177.)

The court has reviewed the entire record and has conducted an *in camera review* of the documents on the exemplar privilege log.[3]

**B.   Standard of Review**

"[A] federal court sitting in diversity must apply state law to privilege issues but federal law to those involving work product." EDO Corp. v. Newark Ins. Co., 145 F.R.D. 18, 21 (D. Conn. 1992).

Under Connecticut law, "the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those

---

[2]The parties were able to resolve some of their disputes, although it appears that more than 150 documents are still in dispute. (Def's Mem, doc. #140 at 5, n.4.)

[3]Because both parties re-argued their entire position in their supplemental briefs, while at the same time incorporating their previous round of briefing, the record reviewed by the court has been voluminous. Ultimately, however, the court is called upon to make a decision based on an *in camera* review of nine documents.

who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 267 Conn. 279, 329 (Conn. 2004). "As a general rule, communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice." Blumenthal v. Kimber Mfg., Inc., 265 Conn. 1, 10 (2003) (internal citations and quotation marks omitted). "Not every communication between client and attorney, however, is protected by the attorney-client privilege." PSE Consulting, Inc. v. Frank Mercede and Sons, Inc., 267 Conn. 279, 330 (2004). "A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." Olson v. Accessory Controls & Equipment Corp., 254 Conn. 145, 157 (2000). For attorney-client privilege to apply in the corporate context, "'(1) the attorney must be acting in a professional capacity for the corporation, (2) the communication must be made to the attorney by current employees or officials of the corporation, (3) the communication must relate to the legal advice sought by the corporation from the attorney, and (4) the communication must be made in confidence.'" Blumenthal, 265 Conn. at 11 (quoting Shew v. Freedom of Information Commission, 245 Conn. 149, 159 (1998).) "The burden of proving each element of the privilege, by a fair

preponderance of the evidence . . . rests with. . . the party seeking to assert the privilege." PSE Consulting, Inc., 267 Conn. at 330. The attorney-client privilege "was created to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice. Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications." Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 249 Conn. 36, 52 (1999) (internal citations and quotation marks omitted).

"The work product doctrine is distinct from and broader than the attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 n. 11 (1975) (citing Hickman v. Taylor, 329 U.S. 495, 508 (1947)). The work product doctrine shields from disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative, absent a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); see also In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles,

422 U.S. 225, 238 (1975). "An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information." Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P., 9 F.3d 230 (2d Cir. 1993). "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998). The doctrine extends to notes, memoranda, correspondence, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney. See United States v. Nobles, 422 U.S. 225, 238-39(1975); Carter v. Cornell Univ., 173 F.R.D. 92, 95 (S.D.N.Y. 1997).

**C.   Discussion**

Much of the parties' briefing focuses on the question of whether the documents, even if protected by the attorney-client privilege or work product doctrine, must be produced under the so-called "at issue" doctrine. Defendant GMF argues that, by filing a malpractice claim alleging that GMF's negligence was responsible for its losses, the plaintiff has put all of its attorney-client communications with the Campbell firm at issue. GMF points in particular to its own affirmative defenses that Honda itself was negligent and/or failed to mitigate its

6

damages.[4]  Specifically, GMF argues that during the time the plaintiff was represented by the Campbell firm, it had the opportunity to participate in a high-low arbitration which would have capped its exposure at a figure much lower than the ultimate settlement amount.  GMF argues that a key issue in the case is whether Honda's failure to agree to this was reasonable, and the Campbell firm's communications are therefore at issue.  GMF also seems to argue that the entire defense of the Amtower action is at issue because of the plaintiff's allegation that the defendant's conduct made it impossible for Honda and the Campbell firm to settle the case for less than the ultimate $849,000.  Finally, GMF contends that the Campbell firm's communications are at issue because Honda seeks to collect the attorney's fees it paid to that firm.

"The 'at issue' exception to the protection of the attorney-client privilege is a doctrine of implied waiver by a party of that right.  The at issue doctrine is invoked only when the contents of the legal advice are integral to the outcome of a legal claim or cause of action."  McLaughlin v. FOIC, 83 Conn. App. 190, 195 (2004); see also Expert Choice, Inc. v. Gartner, Inc., 2007 U.S. Dist. LEXIS 21208, 14-15 (D. Conn. 2007).  "Such

---

[4]GMF has asserted three affirmative defenses: that the plaintiff failed to mitigate its damages, that the plaintiff's alleged injury was caused by the plaintiff's own negligence, and that the plaintiff consented to the defendant's dual representation.  (GMF' Answer, doc. #78.)

7

is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship." McLaughlin, 83 Conn. App. at 195. "In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 249 Conn. 36, 54 (Conn. 1999). "Merely because the communications are relevant does not place them at issue." Id., citing Remington Arms Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 415 (D. Del. 1992). "If admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated." Metropolitan Life Ins. Co., 249 Conn. at 54.

The truthful resolution of the parties' claims does not require the defendant to have access to privileged items. The plaintiff has not expressly raised advice of counsel as part of its case. GMF's affirmative defense, that Honda was negligent, is not one that cannot be resolved without a review of attorney-client communications. Nor does the issue about high-low arbitration require the review of Honda's communications with the

Campbell firm. "It is always possible that the client's motive or conduct was influenced by something his attorney told him, but compelling the production cannot be justified solely as a means to check the [client's] statements." Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 416 (D. Del. 1992). Nor is the privilege waived in light of the fact that the plaintiff seeks to collect the Campbell firm's attorney's fees. The reasonableness of the attorney's fees can be determined in the usual fashion, based on legal bills and affidavits, without any need for reviewing counsel's entire file. See, e.g. Microsoft v. Federal Ins. Co., No. M8-85(HB), 2003 U.S. Dist. LEXIS 2683, *9 (S.D.N.Y. Feb. 25, 2003).

GMF relies heavily on the Connecticut Superior Court's holding in Shedrick v. Trantolo & Trantolo, No. CV044000834S, 2005 Conn. Super. LEXIS 1644 (Conn. Super. Ct. Middletown June 9, 2005) (Aurigemma, J.). In the Shedrick case, the defendant law firm was sued for malpractice by a former client who sought the production of documents in the file of another attorney who also represented the plaintiff pursuant to a joint representation agreement with the defendant law firm. The crux of the Shedrick court's decision was that by virtue of the joint representation agreement between the defendant law firm and its co-counsel, documents in co-counsel's files during the period of the joint representation already had been disclosed to the defendant and

the privilege was therefore waived as to those documents. Shedrick, 2005 Conn. Super. LEXIS 1644 at *7. There was no joint representation agreement in this case and GMF never saw Campbell's file.[5]

As to work product protection, GMF argues that the work product doctrine does not apply to the Campbell firm's file because it concerns a lawsuit that has ended. GMF does not point to any caselaw in support of its argument that work product protection terminates when the lawsuit concludes. "'[T]he literal language of the Rule [26(b)(3)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation.'" Bruce v. Christian, 113 F.R.D. 554 (S.D.N.Y. 1986), quoting F.T.C. v. Grolier, Inc., 462 U.S. 19, 26 (1983). "'[J]ust as litigation need not have been commenced for work product protection to apply, a document does not necessarily lose its protection when the litigation ends.'" eSpeed, Inc. v. Bd. of Trade of Chi., Inc., 3-99-CV-1016-M, 2002 U.S. Dist. LEXIS 7918 (S.D.N.Y. May 1,

---

[5]GMF also relies on another recent Superior Court case, Tuccio v. LaPine, No. CV65001439S, 2007 Conn. Super. LEXIS 1933 (Conn. Super. Ct. Danbury Aug. 2, 2007). The specific holding in that case was based on factual issues about the defendant attorney's conduct that the court held could not be truthfully resolved without access to subsequent counsel's files. To the extent that Tuccio announces a per se waiver rule in malpractice cases, the court is unpersuaded as such a rule would be inconsistent with Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co., 249 Conn. 36, 52 (1999) (internal citations and quotation marks omitted).

2002), quoting 6 Moore's Federal Practice (3d ed. 2001) at § 26.70[3][a], p. 26-214. GMF has failed to make the requisite showing of substantial need and inability to obtain the equivalent information without undue hardship.

The only issue remaining before the court is whether each document is in fact protected by attorney-client privilege or the work product doctrine. The court has reviewed the items on the privilege log *in camera.* It finds that portions of most of the items are protected by the attorney-client privilege because they consist of "communications between client and attorney . . . made in confidence for the purpose of seeking legal advice." Blumenthal v. Kimber Mfg., Inc., 265 Conn. 1, 10 (2003) (internal citations and quotation marks omitted). The remaining portions of these documents are fully protected by the work product doctrine because they consist of counsel's summaries, impressions, and litigation strategy.

For all the foregoing reasons, the defendant's Motion to Compel (doc. #140) is denied. Pursuant to the court's previous order, the parties shall discuss their remaining disputes and attempt to resolve them in light of this order.

The plaintiff's Motion for Protective Order (doc. #135) is granted insofar as it seeks a protective order barring the disclosure of the documents discussed in this order. To the extent that the plaintiff seeks a broader protective order, the

motion is denied without prejudice to refiling if the parties are unable to resolve their disputes in light of this ruling.

SO ORDERED at Hartford, Connecticut this 28th day of September, 2007.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge